UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                   |   |                              |
|-------------------|---|------------------------------|
|                   | : |                              |
| FAITH CARTER      | : |                              |
|                   | : |                              |
| v.                | : | Civ. No. 3:17CV02111 (WWE)   |
|                   | : |                              |
| AUTOZONERS, LLC.  | : |                              |
|                   | : |                              |
|                   | : |                              |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Faith Carter brings a four count complaint against her former employer, the AutoZoners, LLC. ("AutoZone"), alleging wrongful discharge, demotion, constructive discharge and retaliation under Title VII, 42 U.S.C. §2000e-2 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§46a-60 et seq. on the basis of her gender, female.[1]

Defendant AutoZone moves for summary judgment on all counts of the complaint.

For the reasons that follow, defendant's Motion for Summary Judgment **[Doc. #21]** is **GRANTED**.

---

[1] In Counts One and Two, plaintiff alleges wrongful discharge, demotion and constructive discharge on the basis of her gender, under CFEPA, Conn. Gen. Stat. §46a-60(a)(1) and Title VII and in Counts Three and Four, plaintiff alleges retaliation for opposing discriminatory practices in the workplace, in violation of CFEPA, Conn. Gen. Stat. §46a-60(a)(4) and Title VII.

STANDARD OF LAW

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing— that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam)(internal quotation citations and marks omitted). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009)(quoting Fed. R. Civ. P. 56(e)). In order to defeat the motion for summary judgment, she must present such evidence as would allow a jury to find in her favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the conclusory allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. Zigmund v. Foster, 106 F. Supp.2d 352, 356 (D. Conn. 2000)(citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008). And because a court is foreclosed from "mak[ing] credibility determinations or weigh[ing] the evidence" at the summary judgment stage, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000), it must "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. Thus, in "a discrimination case where intent and state of mind are in dispute, summary judgment is ordinarily inappropriate," Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir. 2000), provided that the nonmovant has done more than "simply show that there is some metaphysical doubt as to the material facts." Plotzker v. Kips Bay Anesthesia, P.C., 745 F. App'x 436, 437 (2d Cir. 2018) (summary order) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "A trial court should exercise caution when granting summary judgment to an employer where, as here, its intent is a genuine factual issue." *Carlton*, 202 F.3d at 134.

STATEMENT OF FACTS

The following facts are taken from the parties' statements of material facts not in dispute, see Def's Local Rule 56(a)(1) Stat. [doc. #21-2]; Pl's Local Rule 56(a)(2) Stat. [doc. #24-2]; and from exhibits submitted in connection with the Motion for Summary Judgment. Unless otherwise indicated, these facts are not contested. Additional facts will be introduced as necessary in the Court's analysis of plaintiff's claims.

Background

Plaintiff Faith Carter was hired by AutoZone in 2001, became a Store Manager in 2008, and remained in that position until February 2017. [Doc. 24-1, Pl. 56(a)(2) Stat. ¶1]. Beginning in 2013, until she resigned her employment in February 2017, plaintiff was the Store Manager at AutoZone's East Hartford location. Id. ¶8.

In the latter part of 2016, plaintiff reported to District Manager, Jeffrey Kontnick. Id. ¶9. Plaintiff had no problems with Mr. Kontnick and knew she could reach out to him with any operational or personnel issues. Id. ¶10. Kontnick reported to Regional Manager Robert Maldonado.

The Regional Human Resources Manager for the Hartford region was Nuno Antunes. Plaintiff testified that Antunes treated her respectfully and never did anything to make her question his integrity over the years that she had interactions with him. Id. ¶¶12-13. The Divisional Human Resource Manager was Marie Saball. [Doc. 21, Ex. 3, Saball Decl. ¶3].

Plaintiff read and reviewed the Employee Handbook and throughout her employment reviewed the Handbook each time it was updated. [Pl. 56(a)(2) Stat. ¶¶2-4]. Plaintiff knew that AutoZone prohibited gender discrimination and harassment and retaliation. Id. ¶5. Employees are advised that if they experience or receive a report of any discrimination or harassment, the "should complain immediately...to the HR manager. As an alternative, AutoZoners...may submit a written complaint to AutoZoner Relations. Plaintiff was also informed that employees could be terminated for "acts or conduct which may be detrimental to an AutoZoner" and/or for "abusive language." Id. ¶¶6-7.

As the East Hartford Store Manager, plaintiff was the highest ranking employee in the store. Id. ¶18. She knew that customer service was important to AutoZone and that it was part of her job to train employees on how to provide good customer service. Id. ¶16. She knew that customer complaints of any kind must be elevated to corporate. Id. ¶17. As Store Manager,

plaintiff was expected to uphold the values of the company as
well as ensure all of the policies and procedures contained in
the handbook were enforced. Id. ¶19. Plaintiff was responsible
for complying with the company's policies and procedures and for
making sure all the employees in her store did so as well. Id.
¶20. Plaintiff was responsible for training employees on the
company's policies and ensuring they followed the policies. Id.
¶21. Plaintiff knew if she failed to follow the company's
policies, she could be disciplined, up to and including
termination. Id. ¶22.

In addition to training employees, plaintiff knew it was
her job to hire and retain employees; to ensure employees worked
in a safe environment; to be an effective leader with excellent
communication skills; to foster a positive environment for
employees; to ensure all policies and procedures were followed;
and to provide performance counseling and discipline to
employees when necessary. Id. ¶23. As Store Manager, plaintiff
issued Corrective Action Reviews to employees in the store, and
her District Manager approved everyone she submitted for his or
her review. Id. ¶24. Plaintiff knew that she must report when an
employee made a derogatory comment about a customer and she
could be disciplined if she failed to do so. Id. ¶25. Plaintiff
knew that if two employees discussed sexual acts with women she
would need to address that by issuing Corrective Action Reviews

because such conduct would not be appropriate. Id. ¶26. She knew that all AutoZone managers, supervisors, and employees were expected to treat people with respect and, if they failed to do so, they could be disciplined up to and including termination of employment. Id. ¶27. Plaintiff was aware that as the Store Manager of the East Hartford store, she was held to a high standard of conduct in how she behaved in the store and that she needed to model good behavior for the employees to follow. Id. ¶28.

Plaintiff admitted that she received counseling regarding her behavior at work. Id. ¶29.

In January 2016, Regional Human Resources Manager Nuno Antunes spoke to plaintiff as a result of an employee complaint regarding the way plaintiff communicated with employees. Id. ¶30. Antunes also counseled plaintiff regarding the importance of holding employees accountable for their conduct. Id. ¶31.

In the Fall 2016, plaintiff received a performance review with an overall rating of below average. Id. ¶32. She received a rating of "expectations not consistently met" in customer satisfaction. Id. ¶33. Plaintiff testified that she did not think her 2016 performance review was based on her gender. Id. ¶34.

As a Store Manager, plaintiff was responsible for writing evaluations for the employees in her store. Id. ¶35. Employees'

pay raises were linked to their evaluations. Id. ¶36. In September or October 2016, after receiving a performance evaluation from plaintiff, one of her male subordinate employees, DaJavon White-Hill, a Parts Sales Manager, complained to plaintiff about his pay raise and expressed his belief that his raise should have been higher. Id. ¶37. Before White-Hall's complaint about his raise to her, plaintiff had worked with him "fine" for the past year or so that he was assigned to the East Hartford store under her supervision. Id. ¶38. Plaintiff knew White-Hall before he was transferred to the East Hartford store from doing inventories with him at other AutoZone stores. She had no problem with him during these inventories. Id. ¶39.

<u>December 23, 2016</u>

On December 23, 2016, at approximately 5:20 PM during one of the admittedly busiest times in the store, plaintiff and White-Hall had a verbal exchange in front of customers. Id. ¶40.

Plaintiff claims that the incident began when a customer told her that she smelled nice that day and asked whether she was going out. Id. ¶42. She testified that she told the customer, "No, I don't party. I'm a Christian." Id. ¶43. Plaintiff identifies as a Christian. Id. ¶44. Plaintiff claims that after hearing plaintiff's remark, White-Hall said "she's a fake Christian." Id. ¶45. Plaintiff responded to White-Hall by saying "you need to stay out of my personal life because I never

slept with a pastor man and I know who my father is." Id. ¶46. Plaintiff admits that her retort was not respectful and was not appropriate. Id. ¶47. Plaintiff testified that in response to her retort, White-Hall called her a "whore" and a "bitch" and said to "suck his dick" and said he would hit her in the face. Id. ¶48. Plaintiff stated that White-Hall then followed her as she walked to the back of the store and threatened to harm her. Id. ¶49. Plaintiff then repeated "your mama" to White-Hall. Id. ¶50. She knew that "your mama" is disrespectful and a direct insult to the person and the person's mother. Id. ¶51. Plaintiff knew that two wrongs do not make a right. Id. ¶52.

Protected Activity

Immediately following the interaction, White-Hall and Carter separately contacted District Manager Kontnick to make a report. [Pl. 56(a)(2) ¶¶53-54]. Kontnick instructed Carter to leave the store immediately as her shift was nearly over. [Pl. 56(a)(2) ¶55]. Two minutes into her drive home, Kontnick called plaintiff and informed her that she should return to the store and that he had suspended White-Hall. [Pl. 56(a)(2) ¶56].

White-Hall was transferred to another AutoZone store to allow time for the company to conduct an investigation. Id. ¶57. Plaintiff never had to work with White-hall after December 23, 2015. Id. ¶58.

<u>Investigation and Employment Action</u>

Regional Human Resources Manager Nuno Antunes investigated the complaints brought by plaintiff and White-Hall. [Pl. 56(a)(2) ¶59]. He interviewed plaintiff on January 5 and 13, 2017; Odell Crawford on January 12, 2017; Toriano Powell on January 13, 2017; and White-Hall on January 24, 2017. [Nunes Aff. ¶¶3-14; Ex. A-D].

On January 5, 2017, Nunes interviewed Carter regarding the December 23, 2016, incident with White-Hall. [Pl. 56(a)(2) ¶61-73; Doc. #21, Carter Interview Stat. 1/5/17]. Carter told Nunes that:

- White-Hall "told me that I am a bitch, I am a whore, and I must go suck his dick and he followed me home and he knew where I live and that he was going to kill me and my son. He continuously told me to shut the fuck up and gave me the finger." <u>Id.</u>

- White-Hall "said I was messing with his money." <u>Id.</u>

- The incident took place "[b]y the front of the store near pod #2." Two to three customers were in the store at the time of the incident. <u>Id.</u>

- Odell Crawford, part-time sales associate, was a witness to the incident. <u>Id.</u>

- She told White-Hall that she "never slept with a pastor man and [she] knew who her father is." "I meant nothing towards him it was not directly to him, it was meant to say God is the judge of me. It was when he called me a fake Christian. <u>Id.</u>

- She contacted the police immediately following the incident to report that White-Hall threatened to go to her house and kill her and her son. <u>Id.</u>

- The police told White-Hall to leave the premises. Id.

- She immediately contacted her District Manager Jeffrey Kontnick following the incident. Kontnick immediately transferred White-Hall to the Manchester AutoZone store. Id.

- Two and a half to three months before the December 23 incident, Carter heard White-Hall having a discussion with another AutoZone employee Tito Powell about a women and "[h]ow many times they had sex and how she kept coming back for more." Carter spoke to White-Hall and told him "not to discuss his personal business in the store." She did not report to anyone in the company or issue a Corrective Action or create a note or record of her discussion with White-Hall. Powell did not say anything inappropriate during the discussion with White-Hall, "he just listened." Id.

- Over the previous summer, she received a customer complaint that the customer "heard Tito [Powell] make a comment about her saying 'I like that one she is thick.' She said both Powell and White-Hall 'were being dirty.'" The customer did not tell Carter how they were "being dirty." Id.

- In response to the customer complaint, Carter spoke with Powell. Powell admitted nothing. Carter did not issue a Corrective Action to Powell or White-Hall. She did not speak with White-Hall about the complaint because the customer did not tell Carter what he said. Only what Powell said.

- Carter did not report the customer complaint to any company representative.

Mr. Crawford stated that he heard both plaintiff and White-Hall make inappropriate comments to each other during the December 23, 2016 incident. [Pl. 56(a)(2) ¶75-76; Nunes Aff. ¶6, Ex. A]. Crawford stated that he heard White-Hall say "suck my dick bitch and I'll follow you home and kill you and your son"

and "I know where you hang out." [Nunes Aff., Ex. A]. Crawford stated he heard plaintiff say, "If I'm a bitch then you mother is a bitch" and "I never slept with a pastor man and I know who my father is." Id. He stated he did not hear plaintiff call White-Hall's mother a church whore or tell White-Hall he was born a bastard or hear Carter singing. Crawford stated that the incident took place in front of the registers while customers were in the store. Id. He stated that plaintiff called the police and he witnessed the police officers tell White-Hall to leave and not return to the store. Id.

Based on information provided by Crawford, Nunes interviewed Toriano "Tito" Powell on January 7. 2017. Powell denied engaging in a conversation with White-Hall about having sex with Christian girls or making a comment to a female customer about being "thick" or liking "thick" women. [Pl. 56(a)(2) ¶77; Nunes Aff. ¶8, Ex. B].

During an follow-up interview on January 13, 2017, Carter admitted to making repeated "your mama" comments. [Pl. 56(a)(2) ¶79; Nunes Aff. ¶10, Ex. C]. White-Hall "said I'm a bitch, to shut the fuck up, giving me the middle finger and continuously saying that I was a bitch and I said to him 'your[] mamma.' Carter stated that White-Hall also said that he was going to hit me in the face. I felt humiliated when he was treating me th[at]

way in front of customers and Mr. Odell." [Nunes Aff. ¶10, Ex. C].

During an interview on January 24, 2017, White-Hall admitted to using inappropriate language, denied using any threatening language; and reiterated his allegations against plaintiff regarding her conduct on December 23, 2016. [Pl. 56(a)(2) ¶78; Nunes Aff. ¶10, Ex. D]. He stated he asked Carter to stop singing and playing Christian music. He admitted that he called Carter a fake Christian and told her to "suck my dick" at least five times and Carter responded each time stating "your mother." He admitted telling Carter to "shut the fuck up" and gave her the middle finger. He estimated that there were two to five customers in the store during the incident and that he was yelling at Carter. White-Hall called District Manager Jeffrey Kontnick during the incident. Although he does not recall exactly what he told Kontnick, "I told him that I was going to lose my cool. That I was going to say something else to [Carter] not in a threatening way. Things like shut the fuck up, not to speak on my mother." [Nunes Aff. ¶10, Ex. D].

Divisional Human Resources Manager Marie Saball reviewed the investigation conducted by Nuno Antunes, the then-Regional Human Resources Manager for the Hartford Region. [Pl. 56(a)(2) Stat. ¶¶82-82, 85-86; Doc. #21, Ex. 4, Saball Aff. ¶5]. Saball stated that,

[b]ased on the investigation, including the facts that
Ms. Carter admitted: (1) to making "your mamma'
comments and to stating to Mr. White-Hall that she
"never slept with a pastor man" and she "knew who her
father was;" (b) that such comments were not
appropriate; (c) that she failed to report
inappropriate comments that she alleged Mr. White-Hall
had previously made to other individuals (and the
failure to make a report constituted a violation of
company policy); and (d) that she failed to issue any
discipline to Mr. White-Hall for alleged inappropriate
comments he made towards a customer, I recommended
that Ms. Carter be demoted from her Store Manager
positions to a Parts Sales Manager position. I also
recommended that she be issued a Serious Violation
Corrective Action Review due to her unprofessional
conduct and failure to effectively address or report
alleged policy violations and misconduct.

I also recommended that Ms. Carter's salary as a PSM
would be $16.50/hour, which was not a substantial
decrease from what she was earning as a Store Manager.

...

Indeed, I made the recommendation to discharge, rather
than demote, Mr. White-hall due to his improper
language and gestures.

...

I cannot recall ever recommending less than a demotion
for a Store Manager who committed the same misconduct.

Indeed, I have recommended that two male Store
Managers, Michael Cornell and Robert Gold, be fired
due to their failure to report misconduct that was of
a physical and/or threatening nature.

Id. ¶¶5-7, 9, 11-12.

Regional Manager Robert Maldonado averred that in early
2017, he accepted the recommendations made by Marie Saball [Pl.
56(a)(2) Stat. ¶87, Doc. 21, Ex. 3, Maldonado Aff. ¶¶6-9].
Maldonardo stated that "[b]ased on Ms. Saball's recommendation

and my review of the investigation, I decided to demote Ms. Carter to a PSM position with a salary recommendation I had received and to terminate the employment of Mr. White-Hall." Id. ¶10. Maldonardo stated that he terminated the employment of two other AutoZone Store Managers, Michael Cornell and Robert Gold, both male, for failure to report misconduct. Id. ¶11. He was not aware of any reports made by either Cornell or Gold of any alleged discrimination or harassment prior to his decision to terminate their employment. Id. ¶12. He was also not aware of any store manager who committed the same misconduct as Carter who was permitted to remain in that position. Id. ¶13.

Employment Action

On December 23, 2016, White-Hall was immediately suspended from his job and transferred to another AutoZone store pending an investigation by the Company. [Pl. 56(a)(2) Stat. ¶¶56-57]. At the conclusion of the investigation, Saball recommended that White-Hall's employment be terminated. [Pl. 56(a)(2) ¶85]. Based on Sabal's review, Maldonado terminated White-Hall's employment [Pl. 56(a)(2) ¶¶87, 95]. Plaintiff admitted that she never had to work with White-Hall after December 23, 2016. [Pl. 56(a)(2) ¶58]. While plaintiff claims that White-Hall came into the East Hartford AutoZone after his employment was suspended and terminated, she admits that she did not expect the company to take any action besides suspending and firing him other than

perhaps apologizing to her for the December 23, 2016, incident between her and White-Hall. [Pl. 56(a)(2) Stat. ¶96].

On or about February 22, 2017, District Manager Jeffrey Kontnick informed plaintiff that she was being demoted based on the investigation and determination that she failed to handle matters in a professional manner. [Pl. 56(a)(2) Stat. ¶88]. Carter resigned during the meeting with Kontnick after being offered the demotion position as Parts Sales Manager. Id. ¶89.

Plaintiff admits that her employment was not terminated by AutoZone. [Carter Depo. Tr. 200:3-12]. Rather, she was offered a demotion to a lower management position as Parts Sales Manager. She chose to resign from her employment instead of taking the other position. [Pl. 56(a)(2) ¶¶80, 89]. At her deposition, plaintiff testified as follows,

> Q: And I understand you don't agree with the decision to demote you, but I'm asking you what facts you have to support your belief that you were demoted because you are a female.
> . . . .
> A: It's not demoted because I'm a female. They demote me based on what happened. That's what he said on the paper when he bring it to me.
>
> Q: So you don't believe it was because you're a female?
> . . . .
> A: No.

[Pl. Tr. 210:12-25].

DISCUSSION

1. <u>Discrimination on the Basis of Sex (Counts One and Two)</u>

Defendant moves for summary judgment on Carter's Title VII and CFEPA discrimination claims arguing that the evidence does not establish a prima facie case of gender discrimination. For the reasons that follow, the Court agrees.

When there is no direct evidence of discrimination, discrimination claims under Title VII and CFEPA are guided by the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[2]

> Under <u>McDonnell Douglas</u>, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination. <u>Bickerstaff v. Vassar Coll.</u>, 196 F.3d 435, 446 (2d Cir. 1999).

<u>Abrams v. Dep't of Pub. Safety</u>, 764 F.3d 244, 251 (2d Cir. 2014).

<u>Prima Facie Case</u>

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she is a member of a protected

_____

[2] "The analysis of discrimination ... under the CFEPA is the same as under Title VII." <u>Boutillier v. Hartford Pub. Sch.</u>, 221 F. Supp. 3d 255, 270 (D. Conn. 2016)(citing <u>Kaytor v. Electric Boat Corp.</u>, 609 F.3d 537, 556 (2d Cir. 2010)).

class; (2) she was qualified for her position; (3) that she suffered an adverse employment action; and (4) "the adverse employment action took place under circumstances giving a rise to an inference of discriminatory intent." <u>Abrams</u>, 764 F.3d at 251.

There is no dispute that plaintiff is a member of a protected class and that she suffered an adverse employment action, demotion.

Defendant argues that plaintiff cannot meet the minimal burden of her prima facie case, as she was not performing her job as Store Manager in a satisfactory manner at the time of her demotion, and she cannot show that the demotion took place under circumstances giving a rise to an inference of discriminatory intent.

<u>Performing Her Job in a Satisfactory Manner</u>

Plaintiff contends that she was performing her job in a satisfactory manner because she was a Store Manager for eight years at the time of her demotion and thus qualified for the position. "[T]he burden of establishing a prima facie case in employment discrimination cases is 'minimal.'" <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001). The Court finds that Carter has met this minimal burden of showing that she was performing her duties in a satisfactory manner at the time of her demotion.

Adverse Employment Action

Defendant also moves for summary judgment on plaintiff's constructive discharge claim, arguing that Plaintiff has not made out a prima facie case.[3] "[A]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003).

The test for constructive discharge is a purely objective one that looks to the employer's intentional conduct in creating intolerable work conditions. See Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004)("[W]hether the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation...is assessed objectively by reference to a reasonable person in the employee's position."). "The most common constructive discharge case involves veiled or direct threats that failure to resign will result in discharge." Doria v. Cramer Rosenthal McGlynn, Inc., 942 F. Supp. 937, 947 (S.D.N.Y. 1996). Plaintiff does not assert

---

[3] Plaintiff admits that she was not fired by AutoZone. Rather, she was offered a demotion to a lower management position as Parts Sales Manager. She chose to resign from her employment instead of taking the other position. [Pl. 56(a)(2) ¶¶80, 89].

that there were times when she was threatened with dismissal or that there were discussions about the possible termination of her employment. See id.

Even viewing the facts in a light most favorable to the non-moving party, plaintiff has not made out a claim of constructive discharge because her working conditions at the time of resignation were not "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (internal quotation marks and citation omitted). In arguing to the contrary, plaintiff offers only conclusory assertions that she "was facing a significant pay cut and a reduction in the overall number of hours that she would be permitted to work." [Doc. #24-1 at 13]. Defendant countered that the "salary as a [Parts Sales Manager] would be $16.50/hour, which was not a substantial decrease from what she was earning as a Store Manager." [Saball Decl. ¶7]. Defendant further asserted that "[g]iven that a PSM is a non-exempt employee who is eligible for overtime, and a Store Manager is not, Ms. Carter could have had the opportunity to earn more money as a PSM than she had been making." [Maldonado Aff. ¶8]. Plaintiff's generalities are no substitute for concrete evidence of working conditions that are objectively intolerable. Indeed, plaintiff points to no changes in her

20

working conditions except a theoretical loss of income. Because
plaintiff voluntarily resigned <u>before</u> she worked a day as Parts
Service Manager militates against her constructive discharge
claim. "[L]egitimate complaints about work performance are not
the type of deliberate actions on the part of a[n] employer
which create an 'intolerable' work environment for constructive
discharge purposes." <u>Doria</u>, 942 F. Supp. at 947.

> Inasmuch as [plaintiff] did not work even for one day
> in her new position, it is impossible for her to prove
> that the working conditions were intolerable or that
> [defendant] deliberately set about to force her to
> quit. "A reasonable person will usually explore
> alternative avenues thoroughly before coming to the
> conclusion that resignation is the only option."
> <u>Larkin v. Town of West Hartford</u>, 891 F. Supp. 719, 728
> (D. Conn. 1995).

<u>Leson v. ARI of Connecticut, Inc.</u>, 51 F. Supp. 2d 135, 144 (D.
Conn. 1999); <u>see</u> <u>Spence v. Maryland Cas. Co.</u>, 995 F.2d 1147,
1157 (2d Cir. 1993)(none of the undisputed facts, taken from
plaintiff's deposition and affidavit, permit the inference that
plaintiff's working conditions in general were so intolerable
that a reasonable person in his position would have felt
compelled to resign); <u>Boucher v. Saint Francis GI Endoscopy,
LLC</u>, 187 Conn. App. 422, 432 (2019)(A constructive discharge
"cannot be proven merely by evidence that an employee... 
preferred not to continue working for that employer;" or that
"the employee's working conditions were difficult or
unpleasant."); <u>Doria</u>, 942 F. Supp. at 947 ("Yet, none of these

instances, even when taken together [] are sufficient to create
an 'intolerable' work environment such that a reasonable person
in [the plaintiff's] shoes would have felt compelled to
resign."). "Not every slight in the workplace, nor even every
adverse employment action, can form the basis of a constructive
discharge claim under Title VII...." Butts v. New York City
Dep't Of Hous. Pres. And Dev., No. 00-CV-6307 KMK, 2007 WL
259937, at *20 (S.D.N.Y. Jan. 29, 2007), aff'd sub nom. Butts v.
NYC Dep't of Hous. Pres. & Dev., 307 F. App'x 596 (2d Cir.
2009).

Accordingly, defendant's motion for summary judgment is
granted on the issue of constructive discharge.

Inference of Discriminatory Intent

Defendant also argues that plaintiff cannot meet the fourth
element of her prima facie case.

Plaintiff argues that "the most typical method ...to
establish the fourth prong of a prima facie case is to introduce
evidence that the defendant later considered, hired, granted
tenure to, or promoted comparably qualified individuals not in a
protected class." [Doc. #24-1 at 13 (citing cases)]. In support,
plaintiff relies on the fact that after her demotion, AutoZone
promoted a man, Justin Bennett, to fill the position of Store
Manager in April 2017. [Doc. 24-12, Resp. Interrog. No. 15]. The
Second Circuit has "characterized the evidence necessary to

satisfy this initial burden as 'minimal' and 'de minimis,'[] and the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)(citing cases); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)(minimal burden met where plaintiff showed he was in the protected age group, he was qualified for the position, he was discharged and he was replaced by a 31 year old was sufficient to give rise to the inference that he was a victim of discrimination).

Under this de minimus standard, the Court finds that a prima facie showing has been met.

Legitimate Non-Discriminatory Purpose

Once a plaintiff has come forward at the summary judgment stage with sufficient evidence to show a prima facie case, "it creates a presumption that the employer discriminated against the employee in an unlawful manner." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998). At this point, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [demotion]." McBride v. Bic Consumer Prod. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009). "The defendant's burden also is light. The employer need not persuade the court that it was

motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." Greenway*,* 143 F.3d at 52 (emphasis in original).

Defendant has articulated specific reasons for demoting Carter, supported by evidence which if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse employment action. As set forth by Divisional Human Resources Manager Marie Saball,

> [b]ased on the investigation, including the facts that Ms. Carter admitted: (1) to making "your mamma' comments and to stating to Mr. White-Hall that she "never slept with a pastor man" and she "knew who her father was;" (b) that such comments were not appropriate; (c) that she failed to report inappropriate comments that she alleged Mr. White-Hall had previously made to other individuals (and the failure to make a report constituted a violation of company policy); and (d) that she failed to issue any discipline to Mr. White-Hall for alleged inappropriate comments he made towards a customer, I recommended that Ms. Carter be demoted from her Store Manager positions to a Parts Sales Manager position. I also recommended that she be issued a Serious Violation Corrective Action Review due to her unprofessional conduct and failure to effectively address or report alleged policy violations and misconduct.

[Saball Decl. ¶6].

The evidence supporting these reasons, in light of the low burden of production, is enough for the court to conclude that defendant has articulated a legitimate non-discriminatory reason for the demotion.

Pretext

The Court finds that the evidence comprising Carter's gender discrimination claim is insufficient to show pretext. "Such pretext may be demonstrated either by reliance on the evidence comprising the prima facie case or by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Piela v. Connecticut Department of Correction, No. 3:10cv749 (MRK), 2012 WL 1493827, at *8, (D. Conn. April 26, 2012)(quoting Polito v. TriWire Eng'g Solution, Inc., 699 F. Supp. 2d 480, 492 (E.D.N.Y. 2010)).

The undisputed facts are as follows, plaintiff admitted that: (1) she knew that as the Store Manager she was required to follow all AutoZone policies and procedures contained in the Employee Handbook and ensure that her subordinates did the same; (2) as the Store Manager, and highest ranking employee in the East Hartford store, she was held to a high standard of conduct in how she behaved and needed to model good behavior for her employees and treat them with respect; (3) she was responsible for training employees, hiring and retaining employees, ensuring employees worked in a safe environment, act as an effective

leader with excellent communications skills, foster a positive
environment for employees, ensure all AutoZone policies and
procedures are followed and provide performance counseling and
discipline to employees when necessary; (4) she knew that if she
failed to follow policies and procedures that she could be
disciplined, up to and including termination; (5) in January
2016, as a result of an employee complaint, she was counseled
regarding the way she communicated with employees and the
importance of holding employees accountable for their conduct;
(6) in the Fall of 2016, plaintiff received a review with an
overall rating of below average, including a rating of
"expectations not consistently met" in customer satisfaction;
(7) as a Store Manager, plaintiff was responsible for writing
evaluations for the employees in her store; and (8) employee's
pay raises are linked to their evaluations. [Pl. 56(a)(2) Stat.
¶¶18-37].

The parties also do not dispute that: (1) in September or
October 2016, after receiving an evaluation from plaintiff, one
of her male, subordinate employees, White-Hall, a Parts Sales
manager, complained to plaintiff about his pay raise and
expressed his belief that his raise should have been higher; (2)
prior to White-Hall's complaint, plaintiff worked with him
"fine" for the past year that they were in the same store; (3)
she had no prior problems with White-Hall before his transfer to

her store; (4) on December 23, 2016, plaintiff and White-Hall had a verbal exchange in front of customers; (5) plaintiff admits that her comments to White-Hall regarding not sleeping with a pastor man and knowing who her father was not respectful and inappropriate[4]; (6) she admitted that her comment to White-Hall "your mama" was disrespectful and a direct insult and could get her in trouble; (7) she admitted that there were two or three customers in the store at the time she and White-Hall exchanged words and admitted that it is inappropriate for employees to argue in front of customers; (8) in her statement dated January 5, 2017, plaintiff told Mr. Antunes that months before the December 2016 incident, she heard White-Hall talking to another male subordinate employee, Toriano Powell, about having sex with Christian girls and saying that they were "easy;" (9) although plaintiff knew that such conduct violated AutoZone policy, she did not issue any discipline to White-Hall or Powell and did not report this conduct to anyone above her; (10) plaintiff also indicated in her statement that in the Summer of 2016, a female customer told her that employees, including White-Hall, were being "dirty" towards her and that Powell had called her "thick;" and (11) plaintiff knew that she should report this, but never did so at any point before January

---

[4] See Pl. 56(a)(2) Stat. ¶¶46-47, 51-52, 65-67.

5, 2017, when she provided a statement to Nunes during the investigation. [Pl. 56(a)(2) Stat. ¶¶35-39; 65-67; 70-73; 79].

As defendant points out, plaintiff made no showing that similarly situated employees outside of her protected class who were disciplined for the same or similar job performance issues received more favorable treatment. Here, defendant offered testimony from Marie Saball and Robert Maldonado that they recommended termination of employment for Store Managers Michael Cornell and Robert Gold, both male, for their failure to report employee "misconduct that was of a physical and/or threatening nature." [Maldonado Aff. ¶12; Saball Decl. ¶12]. Plaintiff offered no evidence or rebuttal to this showing.

Similarly, plaintiff has made no showing that the investigation by AutoZone was permeated with discriminatory animus. Marie Saball, a member of the protected class, reviewed the investigation conducted by Nuno Antunes, and the facts admitted by plaintiff in making her recommendation to discharge White-Hall and to demote Carter. Plaintiff makes no showing that the investigation conducted by Nunes or Saball's disciplinary recommendation was permeated with discriminatory animus. Last, plaintiff made no showing that Robert Maldonado's decision to demote Carter occurred under circumstances giving rise to an inference of discrimination.

To the extent that defendant proffered Carter's poor job performance as the reason for her demotion, plaintiff has provided no evidence of good job performance or a complete absence of negative performance evaluations and she admitted to the underlying facts set forth in the company's investigation of the December 23, 2016 incident. She merely disagrees with the company's decision to demote her and relies on the fact that they promoted a male to fill her position to show discriminatory animus. Moreover, she argues that "under the circumstances her behavior was understandable." [Doc. #24-1 at 17]. However, plaintiff seemingly glosses over the fact that she admitted to other significant policy violations with employees and customers and the poor performance evaluation earlier in 2016, as well as her admitted role in escalating the incident with White-Hall on December 23, 2016. "'[I]t is not the function of a fact-finder to second-guess business decisions' regarding what constitutes satisfactory work performance." Soderberg v. Gunther Int'l, Inc., 124 F. App'x. 30, 32 (2d Cir. 2005) (quoting Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988)). Additionally, "courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the affected employee.'" Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 319 (E.D.N.Y. 2014) (quoting Baguer v. Spanish Broad. Sys., Inc., No. 04 Civ.

8393(RJS), 2010 WL 2813632, at *11 (S.D.N.Y. July 12, 2010), aff'd, 423 F. App'x. 102 (2d Cir. 2011)). "To demonstrate that an employer's proffered legitimate reason for termination is a pretext for discrimination, a plaintiff must do more than conclusorily dismiss the reason as petty (particularly when it reflects the perception of the CEO); she must adduce admissible evidence that the reason is false." Soderberg, 124 F. App'x at 32. Carter's own deposition testimony and her answers during the investigation indicate that defendant's proffered reasons were not false. In short, although Carter may consider defendant's demotion decision an over-reaction to her job performance issues, she can point to no evidence in the record indicating that her employer was not, in fact, displeased with her actions, much less that the real reason for her demotion was gender discrimination. See id. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)(citations omitted).

The Court finds that the evidence, taken together, fails to raise a genuine issue of material fact with respect to discriminatory animus. Accordingly, summary judgment on Counts One and Two is GRANTED.

2. Retaliation (Counts Three and Four)

Defendant next argues that summary judgment should enter on plaintiff's retaliation claims under Title VII and CFEPA in Counts Three and Four. Plaintiff's retaliation claim is analyzed under the burden-shifting framework of McDonnell Douglas. See Kwan v. Andalex Group LLC, 737 F.3d 834, 843 (2d Cir. 2013); Leson, 51 F. Supp. at 141-42.

Prima Facie Case

In order to establish a prima facie case of retaliation, a plaintiff must establish "(1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013)(per curiam)(quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)). The burden at the summary judgment stage for Plaintiff is "'minimal' and 'de minimis,'" and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Kwan, 737 F.3d at 844 (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)).

Defendant first argues that plaintiff cannot establish a prima facie retaliation case because she cannot establish that she engaged in protected activity. The undisputed evidence shows that plaintiff immediately called her District Manager Kontnick and reported that White-Hall was threatening her, and part of his threats included language of a sexual nature. She argues that the protected activity took place when she complained to Kontnick about White-Hall's "sexual harassment." [Doc. #24-1 at 18]. Defendant argues that "plaintiff...does not believe she reported any gender discrimination or harassment given that she believes the incident between White-Hall and herself on December 23, 2016, occurred due to his displeasure with the pay raise he received." [Doc. 21-1 at 18]. While defendant disputes plaintiff's position, the Court finds that this evidence is sufficient to make a de minimus showing that she engaged in a protected activity when reporting the incident to Kontnick.

Defendant next argues that it did not subject plaintiff to any adverse employment action due to her report.

> For purposes of a retaliation claim, an adverse action need not be an action that affects the terms and conditions of employment, such as a hiring, firing, change in benefits, reassignment or reduction in pay. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 126 S. Ct. 2405, 165 L. Ed.2d 345 (2006). Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id.

at 68, 126 S. Ct. 2405 (internal quotation marks
omitted). This standard "speak[s] of material
adversity because ... it is important to separate
significant from trivial harms. Title VII ... does not
set forth 'a general civility code for the American
workplace.' " Id. at 68, 126 S. Ct. 2405 (emphasis in
original) (quoting Oncale v. Sundowner Offshore
Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L.
Ed. 2d 201 (1998)).

Babarinsa v. Kaleida Health, 58 F. Supp. 3d 250, 264 (W.D.N.Y.

2014), aff'd, 622 F. App'x 36 (2d Cir. 2015).

Further, Carter has come forward with sufficient evidence

to show that she suffered an adverse employment action,

demotion, after she engaged in the protected activity. See e.g.

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)("Adverse

employment actions include discharge, refusal to hire, refusal

to promote, demotion, reduction in pay, and reprimand.").

Finally, Carter has come forward with sufficient evidence upon

which a reasonable trier of fact could find a causal connection

between her report to Kontnick and her subsequent demotion. In

establishing a causal connection, our Court of Appeals has

recognized "that a close temporal relationship between a

plaintiff's participation in protected activity and an

employer's adverse actions can be sufficient to establish

causation." Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d

Cir. 2002)(citing cases). The temporal proximity between the

protected activity on December 23. 2016, and her demotion in

February 2017, is sufficient to establish the required causal link for a prima facie case. Id. at 721.

Legitimate Non-Retaliatory Reason

Defendant's reasons for its allegedly retaliatory actions are the same as those in the context of the discrimination action and are based on job performance issues. Accordingly, defendant has produced sufficient evidence of a legitimate non-retaliatory reason for the demotion.

Pretext

Similarly, plaintiff relies on the same evidence to show pretext and retaliatory motive. For the reasons previously stated, the Court finds that plaintiff has not shown that plaintiff's legitimate, non-retaliatory reasons were a pretext for intentional retaliation. It is worth pointing out that the threatening sexually charged behavior complained of was from a subordinate employee, White-Hall, directed to a supervisor, Carter. Immediately following Carter and White-Hall's complaint, District Manager Kontnick suspended White-Hall and transferred his duty station pending an investigation. Kontnick immediately requested that Carter leave the store and go home as it was the end of her shift. Less than two minutes into her ride home she was informed that White-Hall was suspended and she could return to the store. Moreover, there is no evidence that the subsequent investigation conducted by Nunes, or the review and

recommendation of disciplinary actions by Saball were tinged with discriminatory animus. Marie Saball, a member of the protected class, is the Divisional Human Resources Manager. Plaintiff make no claims or assertions against her or Regional Manager Moldonado, another decision maker, who accepted Saball's recommendations. White-Hall's employment was terminated based on the investigation and recommendation of the decision makers.

Moreover, none of the decision makers were involved in the underlying complaint of sexual harassment that Carter brought against a subordinate employee White-Hall. The evidence shows that the company responded swiftly to Carter's complaints against a subordinate and utilized an investigatory procedure, tiered management review and discipline. Indeed, plaintiff admitted that the disciplinary action and poor performance review that she received in 2016 were not based on her gender. During her investigation interview, she further admitted that she failed to issue a Corrective Action to White-Hall and Powell, two of her subordinates, in the months prior to the incident on December 23, 2016. [Carter Int. Stat. 1/5/17 at 4]. Finally, she also admitted that she engaged in a verbal altercation in the presence of customers with a member of her staff, White-Hall, with whom she had supervisory responsibility. Plaintiff proffered no evidence that similarly situated individuals who committed the same misconduct received more

favorable treatment. Nor did she rebut defendant's proffer that two male Store Managers were fired due to their failure to report misconduct. [Saball Decl. ¶12; Maldonado Aff. ¶11]. There is no evidence, either direct or circumstantial, of retaliatory motive attributed to the defendant on the basis of her protected status. See, e.g., Concepcion v. City of New York, 15 Civ. 2156 (AJP), 2016 WL 386099, at *12 (S.D.N.Y. Jan. 29, 2016), aff'd, 693 F. App'x 31 (2d Cir. 2017) ("A reasonable juror could not find an inference of discrimination, or determine that any lack of training (if any) was because of any of Concepcion's protected characteristics, based on the simple fact that Concepcion was not given permission to attend training."); Encarnacion v. Isabella Geriatric Ctr., Inc., No. 1:11-cv-3757-GHW, 2014 WL 7008946 at *7 (S.D.N.Y. Dec. 12, 2014) ("Plaintiff fails to make out a prima facie case...because she fails to bring any evidence that would give rise to an inference of discrimination."). On this record, plaintiff has not shown that defendant's stated non-retaliatory reasons were a pretext for the true retaliatory motive.

Accordingly, defendant's Motion for Summary Judgment on Counts Three and Four is GRANTED.

CONCLUSION

For the reasons stated, defendant's Motion for Summary Judgment **[Doc. #21]** is **GRANTED** on all Counts.

The Clerk of the Court will enter judgment accordingly.

SO ORDERED at Bridgeport this 21st day of August 2019.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE